J-S08042-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: ADOPTION OF N.A.N., MINOR CHILD | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.N., NATURAL FATHER | : | No. 1607 WDA 2019 |

Appeal from the Order Entered September 24, 2019
in the Court of Common Pleas of Washington County
Orphans' Court at No(s): 63-17-108

BEFORE: OLSON, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: FILED MAY 13, 2020

E.N. ("Father") appeals from the Order granting the Petition filed by S.D. ("Mother") to involuntarily terminate his parental rights as to his daughter, N.A.N. ("Child") (born in June 2007), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), and (b), in order for Mother's husband, R.D., ("Stepfather"), to adopt Child. We affirm.

Child was born in June 2007 to Mother and Father. In October 2007, Father was arrested and charged with, inter alia, two counts of first-degree murder. Father was convicted and sentenced to serve two consecutive terms of life in prison, which he is currently serving at the State Correctional Institution at Huntingdon ("SCI-Huntingdon").

Mother and Stepfather have resided together with Child since 2008, and married in 2015. On January 31, 2017, Mother filed the instant Petition to terminate Father's parental rights as to Child, in order for Stepfather to adopt

Child. The trial court conducted a hearing on April 3, 2017, during which Father participated via teleconference, but was not represented by counsel. Following the hearing and the trial court's appointment of counsel to represent Child, the trial court entered an Order involuntarily terminating Father's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b). On appeal, this Court vacated the Order and remanded to provide Father an opportunity for assistance by legal counsel throughout the termination proceedings.[1]

After remand, the trial court held three evidentiary hearings on the termination Petition on January 29, 2019, April 16, 2019, and May 20, 2019.[2] At the hearings, the trial court heard testimony from Child, Mother, Father, Stepfather, Child's GAL, and various family members of Father and Mother.

_____

[1] See In re Adoption of N.A.N., A Minor, 193 A.3d 1105 (Pa. Super. 2018) (unpublished memorandum).

[2] We note that in the previous appeal, we observed no conflict between Child's legal and best interests, and concluded that the trial court was not required to appoint a separate legal interest counsel and guardian ad litem ("GAL") for Child. See In re Adoption of N.A.N., A Minor, 193 A.3d 1105 (unpublished memorandum at 3-4 n.2) (citing In re Adoption of L.B.M., 161 A.3d 172 (Pa. 2017)). Child was eleven years old at the time of the hearings in the remand matter, and testified in camera at the April 16, 2019 hearing that she wished to be adopted. At the May 20, 2019 hearing, Child's counsel/GAL stated that it is in Child's best interests for Father's parental rights to be terminated, and that termination is also in Child's legal interests. N.T., 5/20/19, at 135. We agree that there was no need for the appointment of a separate legal interest counsel and GAL under L.B.M. See Trial Court Opinion, 11/19/19, at 1.

- 2 -

On February 21, 2019, Mother filed an Amended Petition, wherein she alleged

section 2511(2) as an additional basis for termination.

Based on the testimony and documentary evidence at the hearings, the

trial court made the following findings of fact.

> Testimony indicated that [Child] approached Mother and Step[f]ather several years ago and asked if she could be adopted by Step[f]ather. After some time, Mother and Step[f]ather looked into the process for a private [termination of parental rights,] and hired counsel to help them proceed. [Child] requested this because she does not know Father. When [Child] was three (3) months old, Father was incarcerated and subsequently found guilty of double homicide. Father was given a double life sentence for the crimes, and was incarcerated in Washington County Correctional Facility until February 2010[,] when he was transferred to a new facility. Mother testified [that Child] was approximately one[]year[]old when Mother last took her to see Father. Mother believes that paternal grandfather took [Child] to see Father one additional time in 2008. Mother testified she definitively never took [Child] to see Father after February 2010[,] when Father was moved, but prior to this, she would take [Child] a couple of times per month. These visits were never contact visits and occurred with a glass partition separating Father from Mother and Child.
>
> Even though [Child] never saw Father after this time, Father would send sporadic letters or cards to [Child,] and he sent her two (2) gifts. Mother testified [that] Father would send something approximately five to six times per year. However, even though Father continued to send cards and letters, he never filed a custody action for visitation. Mother never filed for support, and Father never sent any form of support to Mother. As such, Mother testified that Father is a stranger to [Child,] and she does not believe there is any bond. Step[f]ather has been a significant person in the Child's life since approximately 2009[,] when he moved in with Mother and [Child]. Step[f]ather has been a constant for [Child,] and has treated [Child] as his own since [Child] was fourteen (14) or fifteen (15) months old. Step[f]ather testified [that] he and [Child] have a father-child bond and that he tucks her into bed, makes sure she gets to school, spends time with her, and that he loves her. Step[f]ather has been present to

perform the duties that Father has been unable to perform due to his incarceration. Step[f]ather additionally testified that his best and personal interest is what is best for [Child], and that would include a relationship with [] Father if she desired to have one with him.

Additionally, Mother testified that[,] if Father were to walk into a room with [Child], [Child] would not know he was her [f]ather. [Child] additionally testified that she may have seen Father's photograph once, but does not remember him. Testimony also indicated that [Child] views Mother's and Step[f]ather's parents as her grandparents. Mother further testified that[,] as far as she is aware, Father has not attempted to call [Child] from SCI[-]Huntington[,] and no one from that facility has ever contacted Mother about setting up an account for Father to contact [Child]. On two occasions, Father sent [Child] gifts. Mother testified that[,] when [Child] was young[,] she would attempt to read her the letters sent by Father[,] but [Child] was not interested. Mother has kept everything Father sent to [Child], but [Child] is not interested in reading his correspondence[,] and tells Mother to throw them in the garbage. Mother will not throw the letters away in case [Child] would want to read them one day. In fact, Father has informally requested that [Child] visit him[,] and [Child] has indicated to Mother that she wants to be adopted[,] and wants nothing to do with Father.

Father testified that the last call he made to [C]hild was in 2015[,] because Mother would not answer the phone. He testified [that] the frequency of these calls was approximately once per week. Father answered several very specific questions regarding the termination of his rights and whether it would be in the Child's best interest and whether Step[f]ather would be able to properly care for [Child]. When asked if Step[f]ather would be able to properly care for the basic needs of [Child], Father answered that he believes that Step[f]ather would care for her needs. When asked why his rights should not be terminated, Father gave the following response:

> Because I'm her father. I have no problem with [Stepfather] adopting my daughter. If he wants to adopt her, I can deal with that, […] but I want some kind of visitation rights to my daughter. She is still my daughter. Nobody can take that away from me. [N.T., 5/20/19, at 93.]

- 4 -

Counsel for [Child] stated to Father[,] "and you agree with me that at this point you can't provide parental care[,]"[ id. at 100,] and Father did not dispute this statement. Child's counsel also asked about Father's prospect to be able to provide parental care in the future[,] and he responded: "Most likely there won't be." [Id.]

Father additionally testified that he believes Step[f]ather is doing a good job raising [Child] and that he is stepping in and fulfilling a parental role that Father is unable to fill. Father believes it is good for [Child] to have someone like Step[f]ather and that [Child] should not be forced to visit him. When asked if he believes adoption to be in [Child's] best interest, Father stated yes and no. When asked to clarify, Father said the following:

> It is in her best interest. She needs that solid – that solid father figure in her life while I'm in here. I will never take that away from our daughter, but I also know, once that happens, that I'll never be in my daughter's life. [Id. at 105.]

Trial Court Opinion, 11/19/19, at 3-6.

After the parties submitted briefs, the trial court entered the Order terminating Father's parental rights under 23 Pa.C.S.A. § 2511(a)(1), (2), and (b). Father timely filed a Notice of Appeal and a Pa.R.A.P. 1925(a)(2)(i) Concise Statement of Errors Complained of on Appeal.

On appeal, Father raises two issues:

I. Did the trial court commit reversible error in granting the [P]etition for involuntary termination of parental rights under 23 Pa.C.S.[A.] § 2511(a)(1) in finding [that Mother] presented clear and convincing evidence that natural [F]ather failed to fulfill her [sic] parental obligations?

II. Did the trial court commit reversible error in granting the [P]etition for involuntary termination of parental rights under 23 Pa.C.S.[A.] § 2511(b) in finding that [Mother] presented clear and

convincing evidence that the statutory grounds for termination best served the needs and welfare of [Child]?

Father's Brief at 8.[3]

Father argues that termination is improper under sections 2511(a)(1) and (2). Id. at 14. Regarding section 2511(a)(1), Father argues that Mother and Stepfather have sabotaged his efforts to maintain a relationship with Child. Id. at 16. He points to Stepfather's purported animosity towards Father, demonstrated by Stepfather's refusal to provide Father with updated contact information, as evidence of this sabotage. Id. at 16-17. Additionally, Father points to Mother's recognition that Father has been writing to and attempting to call Child for a long period of time. Id. at 18-19. Regarding section 2511(a)(2), Father argues that, despite his sentence of life in prison, he has "utilized all tools and opportunities available to him," mindful of SCI-Huntington's regulations, in order to maintain a relationship with Child. Id.

_____

[3] Father challenges only section 2511(a)(1) and (b) in his Statement of the Questions Involved. In his Summary of Argument, he challenges both section 2511(a)(1) and (2), but does not mention section 2511(b). In his Concise Statement, Father raised section 2511(a)(2), but did not raise section 2511(b). As a result, Father has waived any challenge to termination pursuant to section 2511(a)(2) and (b). See Krebs v. United Refining Co., 893 A.2d 776, 797 (Pa. Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues); see also In re W.H., 25 A.3d 330, 339 n.3 (Pa. Super. 2011); see also In re M.Z.T.M.W., 163 A.3d 462, 465-66 (Pa. Super. 2017). Nevertheless, we would find such a challenge to section 2511(a)(2) and (b) lacks merit for the reasons set forth by the trial court and below.

at 20. Father again points to Mother's and Stepfather's failure to provide him with updated contact information as evidence that he is doing the best that he can to maintain a relationship with Child under the circumstances. Id. at 20-22.

Regarding our review of termination orders, we have stated as follows:

[E]ven where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

In re Adoption of S.P., 47 A.3d 817, 826-27 (Pa. 2012) (citation omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. In re R.N.J., 985 A.2d 273, 276 (Pa. Super. 2009).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a), along with consideration of section 2511(b). See In re B.L.W., 843 A.2d 380, 384 (Pa. Super. 2004). The trial court considered section 2511(a)(1), (2), and (b), which provides, in relevant part, as follows:

§ 2511. Grounds for involuntary termination

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the

> petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *
>
>  (b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (b).

With respect to subsection 2511(a)(1), our Supreme Court has held as

follows:

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

In re Adoption of Charles E.D.M., 708 A.2d 88, 92 (Pa. 1988).

Further, this Court has stated:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and

> consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

In re B.,N.M., 856 A.2d 847, 854-55 (Pa. Super. 2004) (citations omitted).

To satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. See In re Adoption of M.E.P., 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. In re A.L.D., 797 A.2d 326, 337 (Pa. Super. 2002).

Our Supreme Court has addressed the termination of parental rights of incarcerated parents under section 2511(a)(2), stating that "incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing essential parental care, control, or subsistence." In re Adoption of S.P., 47 A.3d at 830 (citation and internal quotation marks omitted). In particular, "the length of the remaining confinement can be considered as highly relevant to whether the conditions

and causes of the incapacity ... cannot or will not be remedied by the parent, sufficient to provide grounds for termination pursuant to 23 Pa.C.S.[A.] § 2511(a)(2)." Id. (internal quotation marks omitted).

In regard to the termination of Father's parental rights under section 2511(a)(1), the trial court stated as follows.

> This case is before this [c]ourt after Father appealed and succeeded on a prior attempt for termination of his parental rights to [Child]. The [Order on] appeal was [vacated and remanded] due to a technicality with an improper colloquy. Much of the factual testimony remains the same, including [Child's] desire for Father's rights to be terminated[,] as she would like to be adopted by Step[f]ather. [Child] has lived with Mother for her entire life[,] and has lived with Mother and Step[f]ather since sometime around 2008. When Father was initially incarcerated in Washington County Correctional Facility, Mother would take [Child] to visit with him. Testimony established [that Child] has not visited with Father since at least 2010, but visits likely stopped well before 2010. [Child] has never spoken with Father over the phone[,] and [Child] refuses to read any correspondence from Father. Mother testified credibly that she attempted to read the letters and cards to [Child] when [Child] was young, but [Child] was not interested. Mother and Step[f]ather both testified [that] they would support [Child] if she decided she would want a relationship with Father.
>
> Part of Father's appeal is based upon his belief that testimony and evidence established there have been systematic efforts by Mother or Step[f]ather to thwart Father's ability to maintain and cultivate a relationship with [Child]. This is simply not supported in the record. Father has failed to perform parental duties[,] and [Mother] met all statutory requirements of § 2511(a)(1), (a)(2), and (b) by clear and convincing evidence. Therefore, this [c]ourt properly terminated Father's parental rights pursuant to § 2511(a)(1). ....
>
> Here, Father has not seen [Child] for [more than nine years.] Father also has not provided for [Child] emotionally, educationally, or financially. In fact, in terms of providing for [Child] emotionally, the testimony clearly established that [Child]

does not want a relationship with Father[,] and the two have never had a conversation. Father has also sent sporadic cards and letters to [Child] and sent [Child] two (2) gifts. [Child] refuses to read these cards and letters from Father and does not have the gifts. Father is alleging that Mother and Step[f]ather are thwarting his ability to have a relationship with [Child], but Mother testified she used to try to read the letters and cards to [Child], and now that [Child] is able to read[, Child] refuses to look at the letters. In fact, instead of throwing the cards and letters away[,] as [Child] requested, Mother keeps everything in case some day [Child] wants to read the notes from Father.

Furthermore, Father has never petitioned [the trial court] or any court for custody or visitation with [Child]. In fact, Father admitted he is unable to perform parental duties and it is unlikely that he will be able to do so in the future. Additionally, Father testified [that] he has no problem with Step[f]ather adopting [Child], and stated that[,] if Step[f]ather wants to adopt [Child], Father can deal with [Child] being adopted. Father also stated that Step[f]ather has been taking care of [Child,] and it is in [Child's] best interest, because she needs a solid father figure in her life. [The trial court] found that Father could not be clearer in asserting that he is unable to perform parental duties, and has not done so for years[;] it is unknown if or when he would be able to do so[;] and it is in [Child's] best interest to be adopted. Additionally, Father does not necessarily disagree with [Child] being adopted, but he wants the option of having a relationship with [Child]. The evidence does not support that Mother and Step[f]ather have thwarted the relationship between Father and [Child].

Trial Court Opinion, 11/19/19, at 7-9 (some internal citations omitted).

The termination of Father's parental rights to Child is warranted pursuant to section 2511(a)(1). For more than six months prior to the filing of the Petition, Father failed to perform parental duties due to his incarceration. Father had only sporadic contact with Child, had not seen her for several years, and had stopped attempting telephone contact several years prior to the filing of the termination Petition. Moreover, although Father sent

Child cards and letters, Child refused them and wanted Mother and Stepfather to throw them away. There was sufficient, competent evidence in the record for the trial court to find that Mother and Stepfather had not thwarted Father's attempts to have a relationship with Child, and that the requirements for terminating Father's parental rights under section 2511(a)(1) were met. We, thus, find no abuse of the trial court's discretion in finding that Father's parental rights should be terminated under section 2511(a)(1). In re Adoption of S.P., 47 A.3d at 826-27.

The trial court then addressed section 2511(a)(2), and, citing our Supreme Court's decision in S.P., supra, concluded that Father would be incapable of performing his parental duties, as he is serving two consecutive terms of life in prison; the incapacity caused Child to be without essential parental care, control, or subsistence necessary for her physical and mental well-being; and Father would most likely be unable to remedy that incapacity. Trial Court Opinion, 11/19/19, at 10-11; see also S.P., 47 A.3d at 830 (holding that a parent's incarceration can be determinative as to a parent's incapacity, and the length of the parent's remaining confinement can be considered as highly relevant as to whether the incapacity can be remedied).

We agree that the termination of Father's parental rights to Child is warranted pursuant to section 2511(a)(2), as Father lacks parental capacity, and the evidence showed that he will be unable to remedy that situation within a reasonable period of time, if ever. There was sufficient, competent evidence

in the record for the trial court to find the grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied. We, thus, find no abuse of the trial court's discretion in finding that Father's parental rights should be terminated under section 2511(a)(2). In re Adoption of S.P., 47 A.3d at 826-27.

In addressing the section 2511(b) factors, the trial court pointed to Father's admission that adoption was in Child's best interest; Child's stated desire to be adopted; Child's disinterest in Father being part of her life; Stepfather's ability to care for Child; and Father's inability to be able to attend to Child's needs, now or in the future. Trial Court Opinion, 11/19/19, at 12-13. After a careful review of the record in this matter, we agree, and conclude that the trial court's conclusions were not the result of an error of law or abuse of discretion. Therefore, the trial court did not err in concluding that termination was in Child's best interest.

Based upon the foregoing, we affirm the Order terminating Father's parental rights with regard to Child under section 2511(a)(1), (2), and (b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/2020